# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

THE EVANGELICAL LUTHERAN GOOD
SAMARITAN SOCIETY, A NORTH
DAKOTA CORPORATION D/B/A/
GOOD SAMARITAN SOCIETY-
BETTY DARE,

        Plaintiff,

v.                                **No. 2:17-cv-00207-MCA-GJF**

BARBARA TELLES, AS PERSONAL
REPRESENTATIVE OF THE WRONGFUL
DEATH ESTATE OF GREGORIO TELLES,
DECEASED,

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendant's *Complaint to Compel Arbitration and Petition for Appointment of Arbitrator* [Doc. 1] and *Motion and Memorandum of Law to Compel Arbitration and Petition for Appointment of Arbitrator* [Doc. 3]  Having considered the submissions and the relevant law, and being otherwise fully informed in the premises, the Court **GRANTS** the *Complaint* and *Motion*, **COMPELS** arbitration, and **DISMISSES** this action.

## I.    BACKGROUND

The present matter arises from a complaint filed by Barbara Telles in the Twelfth Judicial District Court of the State of New Mexico, in which she alleged wrongful death, negligence, negligence per se, misrepresentation, and violation of the New Mexico Unfair

Trade Practices Act.  [Doc. 1-2 (State First Amended Complaint)]  In the State First Amended Complaint, Defendant alleged that the actions of Evangelical Lutheran Good Samaritan Society (Evangelical Lutheran), doing business as Good Samaritan Society – Betty Dare (Betty Dare), a nursing home, as well as named and unnamed individuals, "were wrongful and negligent and were the proximate cause of Gregorio Telles's death." [Doc. 1-2, pg. 8]  Gregorio Telles was Defendant's husband.  [Doc. 1-2, pg. 1]

Evangelical Lutheran sought to initiate arbitration by letter in February 2017. [Doc. 1-3]  When Defendant did not respond to the letter, Evangelical Lutheran filed a *Complaint to Compel Arbitration and Petition for Appointment of Arbitrator* (*Complaint*) in this Court on February 13, 2017.  [Doc. 1]  On the same day, it filed a *Motion and Memorandum of Law to Compel Arbitration and Petition for Appointment of Arbitrator.* [Doc. 2]  Evangelical Lutheran will hereinafter be referred to as "Plaintiff."  Plaintiff argues that Defendant's state court claims must be submitted to an arbitrator because the parties agreed to arbitration when Mr. Telles was admitted to Betty Dare.  [Doc. 1, 2] Defendant argues that any agreement to arbitrate is unenforceable because it is contrary to New Mexico law or is substantively and procedurally unconscionable.  [Doc. 12]

The following facts are undisputed except as noted.  Mr. Telles was a resident of Betty Dare.  [Doc. 3, ¶ 9; Tilman Affidavit, ¶ 4; Doc. 1-2 (State First Amended Complaint, ¶ 23); Doc. 12, pg. 2]  Defendant, who had been designated as Mr. Telles's attorney-in-fact through a durable power of attorney in 2007, signed Betty Dare's admission paperwork at least two times, in 2011 and 2013.  [Doc. 3, pg. 2; Tilman Affidavit, ¶ 4; Doc. 12, pg. 3]  In both instances, Defendant signed an "Admission

Agreement."[1]  [Doc. 1, ¶ 9; Doc. 12, pg. 14; Doc. 12-6 (Telles Affidavit)]  Defendant

alleges that when she signed the Admission Agreements, she was "very emotional and

distraught," and that she was "under the impression that [she] was required to sign papers

for [Mr. Telles's] admission to . . . Betty Dare, and [she does] not remember being told

what arbitration was."  [Doc. 12-6 (Telles Affidavit, ¶¶ 4, 6)]  She maintains that "at the

time [she] signed the [admission] agreements, no one explained that [she] was giving up

the right to a jury trial or the costs associated with arbitration."  [Doc. 12-6 (Telles

Affidavit, ¶ 7)]  Plaintiff alleges to the contrary that the Betty Dare Admissions

Coordinator reviewed the Admission Agreement, including the section on resolution of

legal disputes, with Defendant, and explained to her that "agreeing to arbitrate meant that

in the event any disputes were to arise between Mr. Telles and Betty Dare, they would be

arbitrated rather than heard in a court of law."  [Doc. 1-1 (Tilman Affidavit, ¶¶ 9, 16)]  It

also contends that the Admissions Coordinator explained that agreeing to arbitration was

not a condition of admission.  [*Id.*]

The Admission Agreement includes seven numbered sections addressing 1) the

parties to the agreement, 2) the rights and responsibilities of the parties, 3) conditions of

discharge or transfer, 4) information received by the signer, 5) authorization for medical

care and acknowledgements, 6) notice, and 7) "additional provisions."  [Doc. 1-1, pg. 12]

---

[1] To the extent Defendant argues that the 2011 Admission Agreement is void because it includes a term that is impossible to fulfill, [Doc. 12, pg. 6-8] the Court finds this contention immaterial to analysis of Plaintiff's *Complaint* and *Motion*, as the 2013 Admission Agreement postdated the 2011 Admission Agreement and Plaintiff maintains that it is seeking to compel arbitration under the terms of the 2013 Admission Agreement only.  [Doc. 1, Doc. 13]  Hence, that later agreement is the focus of the Court's analysis.

After these sections, the Admission Agreement includes four unnumbered sections, including a list of state advocacy organizations, a form on which the resident or responsible party is to acknowledge receipt of various materials, two pages titled "Resolution of Legal Disputes," which include a signature line, and a signatures page. [Doc. 1-1, pgs. 23-27]  Throughout the Admission Agreement, including these unnumbered sections, there is a header with the title "Admission Agreement" and all of the pages are numbered consecutively.  [*Id*.]

The "Resolution of Legal Disputes" section includes the following clauses.  At the top of the first page, beneath the header and the title "Resolution of Legal Disputes," is the resident's name and the date of admission.  [Doc. 1-1, pg. 25]  Next, in bold type, is the statement, "Please note that the Resident's agreement to the Resolution of Legal Disputes is not a condition of admission or of continued stay."  [Doc. 1-1, pg. 25] Beneath this statement is a paragraph stating that any claim relating to a violation of a resident's rights would be subject to arbitration.

> A. Resident's Rights.  Any legal controversy, dispute, disagreement or claim arising between the Parties hereto after the execution of this Admission Agreement in which Resident, or a person acting on his or her behalf, alleges a violation of any right granted Resident under law or contract shall be settled exclusively by binding arbitration as set forth in Section C. below.  This provision shall not limit in any way the Resident's right to file formal or informal grievances with the Facility or the State or Federal government.

Next, the Admission Agreement addresses other disputes, including negligence and malpractice claims and all tort claims.  [Doc. 1-3]

> All Other Disputes.  Any legal controversy, dispute, disagreement or claim of any kind arising out of, or related to this Admission Agreement, or the

breach thereof, or, related to the care of stay at the Facility, shall be settled exclusively by binding arbitration as set forth in section C. below. This arbitration clause is meant to apply to all controversies, disputes, disagreements or claims including, but not limited to, all breach of contract claims, all negligence and malpractice claims, all tort claims, and all allegations of fraud concerning entering into or canceling this Admission Agreement. This arbitration provision binds all parties whose claims may arise out of or relate to treatment or service provided by the center including any spouse or heirs of the Resident.

The Admission Agreement then sets out how the arbitration of disputes will proceed.

[Doc. 1-3]

Conduct of Arbitration. The Resident understands that agreeing to arbitrate legal disputes means that he/she is waiving his/her right to sue in a court of law and to a trial by jury and that arbitration is not a limitation of liability but merely shifts the Parties' dispute(s) to an alternate forum. The Resident shall indicate his/her willingness to arbitrate by informing the Facility by marking the YES or NO box below and signing and dating where indicated. This Resolution of Disputes provision is part of the Admission Agreement. Arbitration is conducted as follows: The Parties shall work together in good faith to select a mutually agreeable individual arbitrator or a nationally recognized arbitration service provider. The arbitration shall be conducted in accordance with the rules of the arbitration service provider agreed upon by the Parties. In the event rules of an arbitration service provider are not available for use or the Parties have not agreed to a different set of procedures to govern the arbitration, the Parties agree to use the neutral code of procedure available from The Evangelical Lutheran Good Samaritan Society. Any arbitration conducted pursuant to this Resolution of Legal Disputes shall be conducted within the county wherein this Facility is located. The award rendered by the arbitrator(s) shall be final, and judgment on the award shall be entered in accordance with applicable law in any court having jurisdiction thereof. The Parties understand that arbitration proceedings are not free and that any person requesting arbitration may be required to pay a fee to the agreed upon arbitration service provider or arbitrator and may pay other expenses relating to the arbitration; however, the Parties agree to divide any filing fee and the costs of the arbitrator equally. The issue of whether a Party's claims [are] subject to arbitration under this Resolution of Legal Disputes provision shall be decided by the arbitrator. Any documents or evidence produced during an arbitration proceeding including the arbitrator's written decision shall be confidential except to the extent needed to enforce any judgment rendered

by the arbitrator. **Parties hereby expressly agree that the Arbitrator shall have exclusive authority to resolve any disputes related to the existence and/or enforceability of this Resolution of Legal Disputes provision, including but not limited to any claim that all or any part of this Resolution of Legal Disputes provision is void or voidable.** If you would like information regarding neutral code of procedure for arbitration or would like to file a claim for arbitration, you may contact the Society's Center for Solutions at 1-877-447-7237.

The final two paragraphs address "governing law" and survival. The survival clause appeared twice in the 2013 form signed by Defendant. [Doc. 1-3]

Governing Law. The Parties acknowledge that the Facility regularly conducts transactions involving interstate commerce and that the services provided by the Facility to the Resident involve interstate commerce. The Parties therefore agree that this Admission Agreement is a transaction involving interstate commerce. The Parties agree that this Resolution of Legal Disputes provision and all proceedings relating to the arbitration of any claim shall be governed by and interpreted under the Federal Arbitration Act, 9 U.S.C. Sections 1-16 (or as amended or superseded). The Parties agree that in the event they are unable to agree upon selection of a mutually agreeable individual arbitrator or nationally recognized arbitration service provider, section 5 of the FAA shall control.

Survival. This Resolution of Legal Disputes provision survives the termination, cancellation or otherwise expiration of the Admission Agreement.

Finally, the Resolution of Legal Disputes section includes two check boxes in which the signer is to indicate affirmatively whether he or she agrees or declines to arbitrate. [Doc. 1-3]

☐ YES I DO wish to arbitrate disputes and I received a copy of this Resolution of Legal Disputes

☐ NO I DO NOT wish to arbitrate disputes

In both 2011 and 2013, Defendant checked the box indicating that she wished to arbitrate disputes and signed beneath the check boxes.  [Doc. 1-3]

## II.  DISCUSSION

Congress enacted the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16 (2014), to place "arbitration agreements on an equal footing with other contracts, and require[] courts to enforce them according to their terms."  *Rent-a-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2013) (*Rent-A-Center*) (internal citations omitted).  Under the FAA, this Court must order arbitration if the parties agreed to arbitrate their dispute.  *See* 9 U.S.C. § 2 ("A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.")

Section 4 of the FAA provides that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement."  Section 3 provides for a stay while arbitration is pending:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the

parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

As a preliminary matter, the Court will apply New Mexico contract law on the formation and enforceability of contracts. "Generally, courts should apply ordinary state-law principles that govern the formation of contracts to determine whether a party has agreed to arbitrate a dispute." *Hardin v. First Cash Fin. Servs., Inc.*, 465 F.3d 470, 475 (10th Cir. 2006) (internal quotation marks and citations omitted); *see also Doctor's Assoc., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996) (stating that state law governing the validity and enforceability of contracts generally may be applied to arbitration agreements under the FAA). "Federal courts apply the choice of law rules of their forum states." *Carl Kelley Const. LLC v. Danco Techs.*, 656 F. Supp. 2d 1323, 1337 (D.N.M. 2009). In New Mexico, courts will apply 1) the law chosen by the parties in the contract, *id.*, or 2) if no governing law is specified in the contract, the rule of *lex loci contractus*— the law of the place of contracting. *Id.*

Here, the Resolution of Legal Disputes section includes a paragraph entitled "Governing Law," but this clause addresses the applicability of the FAA, not governing state law. It provides

The Parties acknowledge that the Facility regularly conducts transaction involving interstate commerce and that the services provided by the Facility to the Resident involve interstate commerce. The Parties therefore agree that this Admission Agreement is a transaction involving interstate commerce. The Parties agree that this Resolution of Legal Disputes provision and all proceedings relating to the arbitration of any claim shall be governed by and interpreted under the Federal Arbitration Act, 9 U.S.C. Sections 1-16 (or as amended or superseded). The Parties agree that in the event they are unable to agree upon selection of a mutually agreeable

individual arbitrator or nationally recognized arbitration service provider, section 5 of the FAA shall control.

[Doc. 1-3, pg. 16]  *See* 9 U.S.C. § 2 (providing that the FAA applies to contracts "evidencing a transaction involving commerce").  Therefore, because the place of contracting is New Mexico, the Court will apply New Mexico law to analysis of the enforceability of the Admission Agreement. *See THI of New Mexico at Hobbs Ctr., LLC v. Spradlin*, 893 F. Supp. 2d 1172, 1184 (D.N.M. 2012) (applying New Mexico law to analysis of arbitrability), *aff'd,* 532 F. App'x 813 (10th Cir. 2013).

The standard of review for motions to compel arbitration is similar to the summary judgment standard.  "[T]he party moving to compel arbitration bears the initial burden of presenting evidence sufficient to demonstrate the existence of an enforceable agreement and the opposing party's failure, neglect, or refusal to arbitrate." *BOSC, Inc. v. Bd. of Cty. Comm'rs of Cty. of Bernalillo*, 853 F.3d 1165, 1177 (10th Cir. 2017).  "[I]f it does so, the burden shifts to the nonmoving party to raise a genuine dispute of material fact regarding the existence of an agreement or the failure to comply therewith." *Id*.  When there are no disputes of material facts, "a district court may decide the arbitration question as a matter of law through motions practice and viewing the facts in the light most favorable to the party opposing arbitration." *Id*. (internal quotation marks and citation omitted).  "But if material disputes of fact *do* exist, the FAA calls for a *summary trial*—not death by discovery." *Id*. (emphasis in original; internal quotation marks and citation omitted).  Unless the party opposing arbitration demands a jury, the district court "shall hear and determine" the questions at issue. *Id*.; 9 U.S.C. § 4.  The object of § 4 is

"to decide quickly—summarily—the proper venue for the case, whether it be the courtroom or the conference room, so the parties can get on with the merits of their dispute." *BOSC, Inc.,* 853 F.3d at 1177 (internal quotation marks and citation omitted).

Here, Defendant does not request a jury trial. [Doc. 12] For the most part, the Court's analysis is based on the text of the Admission Agreement and the arguments in Defendant's *Response* to Plaintiff's *Motion*. The parties attached identical copies of the Admission Agreement to their motions. [*Compare* Doc. 1-1, pg. 12-27 *with* Doc. 12-3, pg. 2-17] Hence, although the parties dispute some of the facts related to the circumstances surrounding the signing of the Admission Agreement, there are no disputed material facts related to the terms of the Admission Agreement itself and, to the extent its analysis depends on the terms of that Agreement, the Court may "decide the arbitration question as a matter of law through motions practice and viewing the facts in the light most favorable to the party opposing arbitration." *Id.* Defendant's request for a hearing and discovery will, therefore, be denied. [Doc. 12, pg. 19] The impact of the disputed facts is addressed in the Court's analysis below.

## A. ANALYSIS

Plaintiff argues that the Court must order arbitration because, by operation of the "delegation clause" in the Admission Agreement, the arbitrability of Defendant's state court claims is an issue for the arbitrator. [Doc. 1, Doc. 3] Generally, it is the Court's task to determine whether a claim is subject to arbitration or whether an arbitration agreement is enforceable. *Felts v. CLK Mgmt., Inc.*, 2011-NMCA-062, ¶ 17, 149 N.M. 681, 254 P.3d 124 (stating that "[t]he general rule is that the arbitrability of a particular

dispute is a threshold issue to be decided by the district court"). However, the parties to an agreement may agree to delegate these issues to an arbitrator in a so-called "delegation clause." *Rent-A-Ctr.,* 561 U.S. at 68–69; *Felts*, 2011-NMCA-062, ¶ 17 (stating that there must be "clear and unmistakable evidence" that the parties agreed to submit such questions to the arbitrator). "The delegation provision is an agreement to arbitrate threshold issues concerning the arbitration agreement. We have recognized that parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Ctr.,* 561 U.S. at 68–69. When the parties have done so clearly and unequivocally, the court is obligated to give effect to that delegation and compel arbitration, unless the party opposing arbitration challenges the delegation clause specifically. *Id.* at 72 (stating that "unless [the party opposing arbitration] challenged the delegation provision specifically, [the Court] must treat it as valid under § 2 [of the FAA], and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the [a]greement as a whole for the arbitrator"). The *Felts* Court stated that "*Rent–A–Center* appears to establish that in cases where a delegation provision granting an arbitrator the authority to determine the validity of an arbitration agreement exists, a district court is precluded from deciding a party's claim of unconscionability unless that claim is based on the alleged unconscionability of the delegation provision itself." *Felts*, 2011-NMCA-062, ¶ 20. Thus, the Court must address two issues: whether the parties agreed to arbitrate arbitrability in a delegation clause, and whether Defendant raised a challenge to the delegation clause specifically. *Id.* ¶¶ 21, 27.

## 1. The Parties Agreed to Arbitrate Arbitrability

The Resolution of Legal Disputes section includes the following statements:

*Any legal controversy, dispute, disagreement or claim of any kind* arising out of, or related to this Admission Agreement, . . . shall be settled exclusively by binding arbitration as set forth in section C. below. This arbitration clause is meant to apply to *all controversies, disputes, disagreements or claims including, . . . all allegations of fraud concerning entering into or canceling this Admission Agreement.*

The issue of whether a Party's claims [are] subject to arbitration under this Resolution of Legal Disputes provision shall be decided by the arbitrator. . . . **Parties hereby expressly agree that the Arbitrator shall have exclusive authority to resolve any disputes related to the existence and/or enforceability of this Resolution of Legal Disputes provision, including but not limited to any claim that all or any part of this Resolution of Legal Disputes provision is void or voidable.**

[Doc. 1-3, pg. 15-16 (Emphasis added, bold in original)]

In *Felts*, the New Mexico Court of Appeals held that there was a "clear[] and unmistakable[]" agreement to arbitrate the threshold issue of arbitrability where the agreement included a provision that "all disputes," including "any and all claims, disputes or controversies . . . that arise out of [the underlying contract or] this [a]greement to [a]rbitrate [d]isputes, . . . including disputes as to the matters subject to arbitration" would be subject to arbitration. *Felts*, 2011-NMCA-062, ¶ 23. It concluded, "We view this . . . language to be clear and unmistakable evidence to the effect that the parties agreed to arbitrate all issues, including issues of arbitrability." *Id.* Similarly, the clause at issue in *Rent-A-Center* provided that "[t]he [a]rbitrator, and not any federal, state, or local court or agency, shall have *exclusive authority* to resolve *any dispute* relating to the interpretation, *applicability, enforceability or formation* of this [a]greement including, but

not limited to *any claim that all or any part of this [a]greement is void or voidable*."
*Rent-A-Ctr.,* 561 U.S. at 66 (Emphasis added).

Here, as in *Felts* and *Rent-A-Center*, the delegation language above gives an arbitrator the authority to decide which claims are subject to arbitration and clearly delegates questions of the enforceability of the arbitration agreement—i.e., Defendant's arguments—to the arbitrator. The references to "enforceability," scope, and the "void[ness] or voidability" of the agreement implicate threshold arbitrability concerns. *See Felts*, 2011-NMCA-062, ¶ 23; *see also Clay v. New Mexico Title Loans, Inc.*, 2012-NMCA-102, ¶ 12, 288 P.3d 888 (stating that a clause "specify[ing] disputes about the 'validity, enforceability, arbitrability or scope' of the [arbitration provision]" was "even more clear than in *Felts*" and holding that the parties had agreed to submit the issue of arbitrability to the arbitrator).

**2. The Court will Give Effect to the Delegation Clause**

Having found that the Resolution of Legal Disputes section includes a clear delegation clause, the Court turns to the second question: whether Defendant raised a specific challenge to the delegation clause itself. Absent a specific challenge, the terms of the delegation clause control.

*Rent-A-Center* is the guiding case on this issue. In *Rent-A-Center*, the plaintiff argued in the district court and the Ninth Circuit Court of Appeals that "the [arbitration a]greement [in that case] was unconscionable." *Jackson v. Rent-A-Ctr. W., Inc.*, 581 F.3d 912, 914 (9th Cir. 2009), *rev'd,* 561 U.S. 63 (2010). "In particular, he contended that the [arbitration a]greement was substantively unconscionable because it contained one-sided

coverage and discovery provisions and a provision specifying that the arbitrator's fee was to be equally shared by the parties" and that "the [arbitration a]greement was procedurally unconscionable because the form contract was presented to him as a non-negotiable condition of his employment." *Id*. The Ninth Circuit reversed the district court's order to compel arbitration, holding that "where . . . an arbitration agreement delegates the question of the arbitration agreement's validity to the arbitrator, a dispute as to whether the agreement to arbitrate arbitrability is itself enforceable is nonetheless for the court to decide as a threshold matter." *Id.* at 919.

After reviewing the substance of Jackson's arguments, the United States Supreme Court concluded that Jackson had failed to mount a challenge to the delegation clause specifically, and reversed. *Rent-A-Ctr.,* 561 U.S. at 76. For instance, the Court noted that Jackson asserted that the arbitration agreement was one-sided and stated, "This one-sided-coverage argument clearly did not go to the validity of the delegation provision." *Id.* at 73. Next, it examined Jackson's arguments related to the "fee-splitting arrangement and the limitations on discovery." *Id.* at 74. It noted that it might be possible to argue that such clauses rendered the delegation clause unconscionable because these "procedures . . . [applied to] arbitration under both the agreement to arbitrate employment-related disputes and the delegation provision." *Id.* Nevertheless, the Court concluded that these arguments did not challenge the delegation clause because Jackson "did not make any arguments specific to the delegation provision; he argued that the fee-sharing and discovery procedures rendered the entire [a]greement invalid." *Id.* Because Jackson's arguments related to the arbitration agreement in its entirety, the Court held

that "[t]he [d]istrict [c]ourt correctly concluded that Jackson challenged only the validity of the contract as a whole" and that, therefore, the issue of arbitrability was for the arbitrator. *Id.* at 72.

Here, Defendant argues generally that "the arbitration agreements, entitled Resolution of Legal Disputes, are unenforceable, including any alleged delegation clauses, pursuant to applicable New Mexico contract law and the issue of arbitrability is a threshold issue properly addressed by the Court" and "the arbitration agreement[] is substantively and procedurally unconscionable." [Doc. 12, pg. 1] More specifically, similar to the *Rent-A-Center* plaintiff, Defendant argues that the Resolution of Legal Disputes agreement is substantively unconscionable because it 1) is one-side because it "bind[s] all resident's claims but not Plaintiff's collection claims" [Doc. 12, pg. 9]; 2) "undermine[s] vindication of statutory rights" related to fees because it requires fees to be equally shared [Doc. 12, pg. 11]; and imposes a gag order [Doc. 12, pg. 12]. Finally, she argues that the Resolution of Legal Disputes agreement contravenes what she asserts is federal public policy prohibiting the execution of arbitration agreements as a condition of admission to a long-term care facility. [Doc. 12, pg. 15] None of these arguments specifically addresses the validity of the delegation clause itself.

Defendant's *Response* mentions the delegation clause in two places. Defendant contends that the Court should determine arbitrability because she "challenges the validity of the entire arbitration agreement[] including [its] delegation clause if any." [Doc. 12, pg. 6] She also states, "Plaintiff's Motion to Compel Arbitration should be denied because (1) the arbitration agreement[], entitled Resolution of Legal Disputes, [is]

unenforceable, including any alleged delegation clauses." [Doc. 12, pg. 1] She also asserts that "the issue of arbitrability is a threshold issue properly addressed by the Court." [Doc. 12, pg. 1] In *Rent-A-Center*, Jackson asserted in his brief before the Supreme Court that, in the courts below, "[h]e opposed the motion to compel on the ground that the *entire arbitration agreement,* including the delegation clause, was unconscionable." *Id.* at 73. Defendant's vague references to the delegation clause, like in *Rent-A-Center*, are insufficient. *Id.*

Defendant's reliance on *Felts* is misplaced. [Doc. 12, pg. 6] In that case, the New Mexico Court of Appeals held that the plaintiff, the party opposing arbitration, had sufficiently challenged the delegation clause where the delegation clause included the same terms that the plaintiff challenged elsewhere in the agreement. *Felts*, 2011-NMCA-062, ¶ 30. "First, because the delegation clause included a parenthetical prohibiting class arbitration . . . , [the plaintiff's] argument that the ban on class actions rendered the arbitration provision unconscionable was directed to the delegation clause as well." *Id.* In addition, "her argument that performance of the delegation clause was rendered impossible . . . because the [National Arbitration Forum (NAF)] had ceased its consumer arbitration business was also a specific challenge to the delegation clause, which assigned the NAF as the arbitral forum for resolving 'any and all disputes' between the parties." *Id.* It concluded that "[t]hese arguments were both clearly directed against the validity of the delegation clause alone, and were distinct from [the plaintiff's] claims against the [l]oan [a]greements." *Id.* Unlike in that case, the delegation clause here does not include terms that are implicated by Defendant's arguments related to the one-sidedness of the

Resolution of Legal Disputes agreement, the fee provision, or the gag order. In sum, Defendant's substantive unconscionability arguments do not specifically challenge the delegation provision.

Defendant also argues that the Resolution of Legal Disputes agreement is procedurally unconscionable due to the circumstances under which she signed it and because it does not include the rules and procedures for the arbitration. [Doc. 12, pg. 13-14] This argument could be viewed to implicate the delegation clause because it addresses the circumstances surrounding the execution of that particular agreement in addition to Admission Agreement as a whole. *Cf. Rent-A-Ctr.,* 561 U.S. at 74 (noting that it might be possible to argue that unfair procedural clauses rendered the delegation clause unconscionable because these "procedures . . . [applied to] arbitration under both the agreement to arbitrate employment-related disputes and the delegation provision" so long as the party opposing arbitration challenged the delegation clause). *But see Mercadante v. XE Servs., LLC*, 78 F. Supp. 3d 131, 141 (D.D.C. 2015) (holding that the delegation clause was not challenged where the plaintiffs did not mention in it arguing that the entire agreement was signed under duress).

Defendant alleges that when she signed the Admission Agreements, she was "very emotional and distraught," and that she was "under the impression that [she] was required to sign papers for [Mr. Telles's] admission to . . . Betty Dare, and [she does] not remember being told what arbitration was." [Doc. 12-6 (Telles Affidavit, ¶¶ 4, 6)] She maintains that "at the time [she] signed the [admission] agreements, no one explained that [she] was giving up the right to a jury trial or the costs associated with arbitration." [Doc.

12-6 (Telles Affidavit, ¶ 7)]   Plaintiff alleges to the contrary that the Betty Dare Admissions Coordinator reviewed the Admission Agreement, including the Resolution of Legal Disputes section, with Defendant, and explained to her that "agreeing to arbitrate meant that in the event any disputes were to arise between Mr. Telles and Betty Dare, they would be arbitrated rather than heard in a court of law."   [Doc. 1-1 (Tilman Affidavit, ¶¶ 9, 16)]   It also contends that the Admissions Coordinator explained that agreeing to arbitration was not a condition of admission.  [*Id.*]

Under the standard of review applicable to motions to compel arbitration, a dispute of material fact might require a hearing and/or discovery.  *BOSC, Inc.*, 853 F.3d at 1177.  Nonetheless, a hearing is not required when resolution of disputed facts will not change the Court's analysis.  *See id.* at 1178 (holding that the district court did not err in denying a summary trial or discovery to resolve disputed factual issues where their resolution would not have altered its analysis).  Here, even if the Court were to accept Defendant's statement of facts as true, Defendant has not established that the delegation clause is procedurally unconscionable and, therefore, the Court's analysis of the enforceability of the delegation clause is unchanged.

"Procedural unconscionability examines the particular factual circumstances surrounding the formation of the contract, including the relative bargaining strength, sophistication of the parties, and the extent to which either party felt free to accept or decline terms demanded by the other."  *Rivera v. Am. Gen. Fin. Servs., Inc.*, 2011-NMSC-033, ¶ 44, 150 N.M. 398, 259 P.3d 803 (alteration, internal quotation marks and citation omitted).  "When assessing procedural unconscionability, courts should consider

whether the contract is . . . [a]n adhesion contract[, which is] a standardized contract offered by a transacting party with superior bargaining strength to a weaker party on a take-it-or-leave-it basis, without opportunity for bargaining." *Id.* (internal quotation marks and citation omitted).

Defendant argues that she was "distraught" when she signed the Admission Agreement, that she believed her signature on all of the forms was required for her husband's admission, that she did not "receive an explanation of what arbitration was" and that she does not understand that "rights were forfeited" by agreeing to arbitrate. [Doc. 12, pg. 14] However, Defendant does not dispute that the Resolution of Legal Disputes section includes a statement that "[t]he Resident understands that agreeing to arbitrate legal disputes means that he/she is waiving his/her right to sue in a court of law and to a trial by jury and that arbitration is not a limitation of liability but merely shifts the Parties' dispute(s) to an alternate forum." [Doc. 1-1, pg. 25] Additionally, the Resolution of Legal Disputes section begins with a heading in bold type stating, "**Please note that the Resident's agreement to the Resolution of Legal Disputes is not a condition of admission or of continued stay**" and includes the statement that "[t]he Resident shall indicate his/her willingness to arbitrate by informing the Facility by marking the YES or NO box below and signing and dating where indicated." [Doc. 1-3, pg. 25] The section includes two check boxes in which Defendant could indicate whether she wished to arbitrate disputes or not. [Doc. 1-1, pg. 25-26] By checking the "yes" box, Defendant also affirmed that she had received a copy of the Resolution of Legal Disputes section. [Doc. 1-1, pg. 26] Thus, in two different ways, the form informed the signer

that arbitration was an option, not a requirement, and the Resolution of Legal Disputes did not present a "take it or leave it" situation. Finally, the language used in this section is not complicated. "Each party to a contract has a duty to read and familiarize herself with its contents before signing it, and thus, a party who executes and enters a written contract is presumed to know the terms of the agreement and to have agreed to each of its provisions in the absence of fraud, misrepresentation, or some other wrongful act." *THI of New Mexico at Vida Encantada, LLC v. Archuleta*, No. CIV. 11-399 LH/ACT, 2013 WL 2387752, at *17 (D.N.M. Apr. 30, 2013). Defendant does not argue that Betty Dare fraudulently or wrongfully procured her signature on the Resolution of Legal Disputes section or the Admission Agreement. Although she argues that she "ha[s] no legal background or experience that would have provided [her] with knowledge concerning arbitration," this fact is insufficient on its own to demonstrate procedural unconscionability. *See id.* (stating that where the contract "use[d] legalistic terms and [the signer] ha[d] only a high school education," there was no procedural unconscionability because "the circumstances were [not] so grossly unequal to sustain a finding of procedural unconscionability" and that "[u]nequal bargaining power alone is not sufficient to find an arbitration agreement unenforceable."). Finally, "[a] mere subjective feeling of not being free to decline arbitration terms [is not] enough to demonstrate procedural unconscionability" because "[a] contract is procedurally unconscionable 'only where the inequality is so gross that one party's choice is effectively non-existent.'" *THI of New Mexico at Hobbs Ctr., LLC v. Patton,* No. CIV. 11-537 LH/CG, 2012 WL 112216, at *22 (D.N.M. Jan. 3, 2012) (quoting *Guthmann v.*

*LaVida Llena,* 103 N.M. 506, 510 (1985)). That was not the case here as pertains to the choice to arbitrate or the delegation clause.

Finally, Defendant argues that Plaintiff's failure to provide the rules and procedures governing arbitration to her before she signed the Admission Agreement renders any agreement procedurally unconscionable. [Doc. 12, pg. 14] The cases cited for this proposition, however, do not state such a blanket rule. Rather, two of the cases held that failure to provide the rules was but one factor among several demonstrating procedural unconscionability. *See Carlson v. Home Team Pest Def., Inc.*, 191 Cal.Rptr.3d 29, 39 (Cal. App. 4th 2015); *Carmona v. Lincoln Millennium Car Wash, Inc.*, 171 Cal.Rptr.3d 42, 49 (Cal. App. 4th 2014). The third case cited by Defendant states that "while it may have been procedurally unfair to have [the plaintiff] sign an agreement referencing rules which were not attached at the time, it would only render the agreement unenforceable if those rules were substantively unconscionable." *Lucas v. Gund, Inc.*, 450 F. Supp. 2d 1125, 1131 (C.D. Cal. 2006). The *Lucas* court noted that the arbitration agreement in that case referenced the American Arbitration Association rules and that those rules were not substantively unconscionable because they did not limit the plaintiff's rights. *Id.*

In any case, the circumstances here are distinguishable from those in *Carlson*, *Carmona*, and *Lucas*. Here, the Resolution of Legal Disputes section provides that the parties would select a "mutually agreeable individual arbitrator or nationally recognized arbitration provider." Only if they could not agree would Plaintiff's code of procedure be used.

The Parties shall work together in good faith to select a mutually agreeable individual arbitrator or a nationally recognized arbitration service provider. The arbitration shall be conducted in accordance with the rules of the arbitration service provider agreed upon by the Parties. In the event rules of an arbitration service provider are not available for use or the Parties have not agreed to a different set of procedures to govern the arbitration, the Parties agree to use the neutral code of procedure available from The Evangelical Lutheran Good Samaritan Society. . . . If you would like information regarding neutral code of procedure for arbitration or would like to file a claim for arbitration, you may contact the Society's Center for Solutions at 1-877-447-7237

[Doc. 1-1, pg. 25]  Thus, no arbitration rules could be attached since the arbitrator had not been selected.  Finally, Defendant does not argue that the code of procedure promulgated by Plaintiff is unfair to her or is substantively unconscionable.

The Court concludes that, although Defendant has shown that there is a dispute over whether the term "arbitration" was explained to her, she has not shown that this dispute is material in the sense that resolution one way or the other will alter the Court's analysis. *See BOSC, Inc.*, 853 F.3d at 1178 (holding that the district court did not err in denying a summary trial or discovery to resolve disputed factual issues where their resolution would not have altered its analysis).  In other words, taking Defendant's facts as true, they do not demonstrate that the delegation clause is procedurally unconscionable.  Hence, because the parties unequivocally agreed to submit questions of arbitrability to an arbitrator, and Defendant did not challenge the delegation clause specifically on substantive unconscionability grounds, the Court must give effect to the delegation clause.  The issue of whether the Resolution of Legal Disputes section of the Admission Agreement is enforceable must be submitted to the arbitrator in the first instance.

Two final issues require disposition.  Citing § 3 of the FAA, Plaintiff requests a stay of "further proceedings in this action . . . or, in the alternative dismiss[al of] this matter without prejudice."  [Doc. 1, pg. 13; Doc. 3, pg. 21]  Section 3 provides that

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court *in which such suit is pending*, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, *shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement*, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3 (Emphasis added).  The Tenth Circuit has held that a district court must stay an action pending before it when arbitration is compelled.  *Thompson v. THI of New Mexico at Casa Arena Blanca, LLC*, No. CIV 05-1331 JB/LCS, 2006 WL 4061187, at *8 (D.N.M. Sept. 12, 2006) ("The Tenth Circuit has cautioned that, when one of the parties petitions the court to stay an action pending compulsory arbitration, the mandatory language of 9 U.S.C. § 3 is binding, and it is error for the court to dismiss the action." (citing *Adair Bus Sales, Inc. v. Blue Bird Corp.,* 25 F.3d 953, 955 (10th Cir. 1994)). However, when the only issue in the district court is a complaint to compel arbitration, and all issues are arbitrable, the district court may dismiss the case.  *Spradlin*, 893 F. Supp. 2d at 1190 (stating that "[n]either Section 3 nor Section 4 of the FAA requires the Court to stay th[e] case when the only issue before it is whether to compel arbitration, and that issue has been resolved"); *Am. Family Mut. Ins. Co. v. Tamko Bldg. Prod., Inc.*, 178 F. Supp. 3d 1121, 1129 (D. Colo. 2016) (stating that dismissal is appropriate where "all claims are arbitrable and the movant specifically requests dismissal rather than a

stay"); *cf. Armijo v. Prudential Ins. Co. of Am.*, 72 F.3d 793, 797 (10th Cir. 1995) (holding that the district court's order compelling arbitration and dismissing the case was a final order permitting review on appeal). Dismissal is appropriate here. *Spradlin*, 893 F. Supp. 2d at 1190.

Plaintiff also requests a stay of the action in state court. [Doc. 1, pg. 13] The only authority cited for such an order is § 3. [*id*.] But "[t]his provision applies only when the Court has the underlying substantive suit before it." *Id*. at 1190-91. "Here, Defendant brought her substantive claims against Plaintiff in state court, while Plaintiff moved to compel Defendant to arbitrate those claims in federal court. Section 3 of the FAA thus does not apply to this situation." *Id*. (citations omitted).

Moreover, the Anti-Injunction Act provides that "[a] court of the United States may not grant an injunction to stay proceedings in a [s]tate court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. "'Section 3 provides only that 'the court in which such suit is pending' must stay proceedings if arbitration is required[;]' it is 'not the express, unambiguous grant of authority by Congress for a federal court to stay state court proceedings.'" *Spradlin*, 893 F. Supp. 2d at 1191 (quoting *Patton,* 2012 WL 112216, at *24). In addition, a stay of the state court action is not necessary to "aid [this Court's] jurisdiction" or to "protect or effectuate its judgment." 28 U.S.C. § 2283. "The Court expects the parties to comply with this Order compelling Defendant to arbitrate [her] claims in the [s]tate [c]ourt [a]ction against Plaintiff[]. In the event of noncompliance, a judgment enforcement action to compel compliance is available to the

aggrieved party." *Spradlin*, 893 F. Supp. 2d at 1191. Hence, this Court "has the tools at its disposal to protect and effectuate its judgment and to aid in its jurisdiction without resorting to an injunction against the state court." *Patton,* 2012 WL 112216, at *24.

## III.    CONCLUSION

For the foregoing reasons, the Court will grant Plaintiff's request for a dismissal of the present matter and deny Plaintiff's request to stay the state action.

**WHEREFORE, IT IS HEREBY ORDERED** that Defendants' *Complaint to Compel Arbitration and Petition for Appointment of Arbitrator* [Doc. 1] and *Motion and Memorandum of Law to Compel Arbitration and Petition for Appointment of Arbitrator* [Doc. 3] are **GRANTED**;

The Court, therefore, **COMPELS** the parties to proceed with arbitration of the enforceability of the Admission Agreement as agreed to in Defendants' Admission Agreement, and **DISMISSES** the present matter.

**IT IS FURTHER ORDERED** that Defendant's requests for a hearing and discovery are **DENIED**;

**IT IS FURTHER ORDERED** that Plaintiff's request for a stay of the state court action is **DENIED**.

**SO ORDERED** this 30th day of September 2017 in Albuquerque, New Mexico.

_____
**M. CHRISTINA ARMIJO**
**Chief United States District Judge**